Good morning, your honors. My name is Ben Coleman. I represent the petitioner appellant, Elliot Scott Grizzle. I'll watch the clock and attempt to save some time for rebuttal. We are asking this court to reverse the district court's determination that Mr. Grizzle procedurally defaulted his jury-tained claim and to, at the very least, send the case back for determination of the merits of that claim. We believe this court can reverse the district court by merely citing two cases, this court's 2002 decision in Melendez v. Plyler and the California Supreme Court's decision in People v. Ayala. In Melendez, this court reiterated the well-established rule that in order for a state procedural default rule to apply, it must be clear, well-established, and consistently applied. And in Melendez, this court determined that while the contemporaneous objection rule in California is well-established and consistently applied when there is absolutely no objection whatsoever, it is not well-established and consistently applied when there is an objection below. And the question is the motion for mistrial on day one, when Juror 5 said that he'd been approached, was to a different panel. Well, wasn't it? Then they constituted a panel after he was replaced the next day. We believe that the motion was to discharge the entire panel. It wasn't a motion just to release Juror 5. And it was denied. And it was denied. All right. Then the next day, the juror absented himself with the permission of the court, no objection to that by the defense, and he got a new jury, right? He got a new juror, one single juror. It was a new panel. And there was no motion to --- for mistrial then. That's disregarding the substance of his motion. His motion was this entire panel has been tainted. Not only was this juror ---- He lost that motion to another panel. And that's the motion we want to review, is his motion that the entire panel was tainted. That's what we want review of. But that wasn't the panel that tried him. Well, 11 of the 12 members were on the panel. And he thought 11 of those 12 members had been tainted. And actually the 12th member was tainted, too, because that alternate juror also was told the same information from juror number five. So all 12 jurors were tainted by this one contact. The fact that one juror substituted in for the other juror does not in any way counteract the substance of the motion, which was that the entire panel has been tainted. We need an entire new panel. But didn't the subsequent voir dire by the trial judge ---- I mean, your argument was juror five knows something. And I want to get back to juror five in a second. Juror five knows something. The entire panel is tainted. And the judge said, you know, the juror five has absented herself, I think. Let's voir dire the rest of the panel. And they did. And everybody on the panel said either I didn't hear it or to the extent I heard it, it wouldn't affect my decision. So don't you have to object to that reconstituted group with a new juror number five in order to preserve your objection? Oh, I don't believe so. And I think that ---- I'd like to clarify, I think, some of the facts as to what happened. I was not the trial attorney, but this is what my reading of the record establishes at trial. Juror number five initially discloses the contact. He is then voir dire. And during the voir dire, he says, well, I mentioned it out in the open in the jury room to several jurors. And the bailiff as well said I was there and I believe everybody in the jury room heard this. But the judge then the next day conducts voir dire of other jury members. Right. And the jurors, every single juror said we know what happened with juror number five. Every single juror said ---- Right. But they all say in one form or another what I heard from juror number five or what I know   So I'm not going to say that it wouldn't affect my decision-making in this case. And that goes to the merits of the claim. Right. But isn't that ---- Once they say that, don't you have to renew your objection and say that's just wrong, the judge couldn't have found that, the jurors can't be believed on that point, or the taint was such that whatever the jurors said, it couldn't have been fair? Why does your objection from the day before carry over to the results of the judge's questioning of the jury? Well, I believe that was the motion that the trial lawyer made on the first day. He said what juror number five said is, well, I can put it out of my mind. And what the trial attorney said is, well, I know he's saying that, but I don't think this juror or any of the jurors can put this out of their mind. It's going to be in the back of their minds that they're being targeted, that their jury numbers are being evaluated by the Aryan Brotherhood or other members of Pelican Bay, which is the most dangerous prison probably in California, or houses the most dangerous prisoners in California with the exception of death row inmates, and that no matter what you say, they're not going to be able to put it out of their mind. That's what he argued to the judge. The day before? Yes. And then they got on the stand, if you will, raised their hands or did whatever they did and said to the judge, I can put it out of my mind. It doesn't bother me. And the judge says, I find as a matter of fact that you're okay. Don't you then have to say, judge, you can't make that finding? It's just a finding that you can't make, as opposed to just saying, as opposed to saying nothing. Well, I guess the question is, is there clearly established, well established, consistently applied California law that says you have to renew it? And the answer is no. We have People v. Ayala. It's the exact same thing. And I'll read it to you. What happens in Ayala is that the jury panel is brought in. The defendant says the defense attorney says we want to discharge the entire panel because we think they're tainted by media coverage. And the judge says, well, I think your motion is premature. Let's voir dire the jurors and find out what happens. And this is what the California Supreme Court holds. The people contend that the defendant failed to preserve his claim for review to the extent his motion sought discharge of the jury panel because the trial court denied the motion as premature without prejudice, pending a broad year, and he failed to renew it afterward. The question is close, but we disagree. The people are correct that the Court denied the motion to discharge the panel as premature. It appears, however, that the Court may have reiterated its prior denial of the motion to discharge the panel at the point at which the defendant moved to be equipped with additional preemptive challenges. In other words, when jury selection was well underway. At least implicitly, the Court finally denied the motion. We will proceed to decide the merit or on the merits. And in this case, this lawyer says, I think the whole panel is tainted. They can't put this stuff out of their minds. The judge's. But when he said that, that was initially the first day. Then the judge said, well, at this particular point, on state of the record, you don't have sufficient evidence to support your request. I will then, I thought the judge said, I will then have all the jurors come in. If you want, tomorrow morning, you think about it. And we'll have them all go through voir dire. And that's how it was left. There was no objection to that process. And as a result, when they came back the following morning, in addition to juror number five, that was followed through. And everybody had not. The defense lawyer had an opportunity to voir dire. I think it was the defense lawyer who actually conducted a voir dire. Asked all these questions of the jurors. And the defense lawyer, who was very well aware of the jurors' concerns, could very well have found that, gee, this jury seems to be quite fair and, as a result, said nothing about his motion for mistrial. Doesn't that suggest that really there was a change of heart and that really there was no basis upon which to file a request for a mistrial? Well, then I go back to the California cases. That's what this Court has to decide. We could sit here and say, as a Federal matter, should, in a Federal criminal trial, should the lawyer have renewed the motion. But that's not the standard. The standard is, is the California law on waiver and default clearly established and consistently applied? And neither the district court nor the Attorney General have cited one single California case that has said that, in that instance, you have to renew the motion. Didn't the court of appeal in California say it in this case? In other words, in this case on direct appeal, didn't the California court of appeal say you defaulted? But nonetheless, we're going to go on and treat your argument under merits or in a belt and suspenders fashion. So wasn't one example of California applying this rule in this very case on direct appeal? Well, I don't see how you can say because there was a ruling in this case, then that means it's clearly established. It's firmly established. It's been consistently applied. I mean, to be consistently applied, you have to apply to more than one case. But the difficulty I'm having is you're asking us to figure out whether California has this rule. In your case, the court of appeal says we do have this rule. And they didn't cite the leading California Supreme Court case? They may have been wrong. You sought review in the California Supreme Court. They denied review. And now you're saying to us, tell the California court of appeal they were wrong, there wasn't such a rule. That's – I mean, that's a difficult problem. But that's not – and I disagree. That's not the standard. This is kind of like a reverse ADEPA situation. Usually the petitioner has to show that there's clearly established Supreme Court precedent to win on the merits of a claim. Well, this is the reverse. Now the State has to show that there's clearly established California law that says that this is defaulted. And they haven't cited – I mean, they've said this case, but they haven't cited a single case. We have pointed to People v. Ayala. The burden is on the Respondent. It's their burden under this Court's case law to establish that the rule is clearly established and consistently applied, and they haven't met that burden. So this Court is not saying, California, you got it wrong. All you're saying is there's no clearly established rule that's consistently applied. That doesn't mean that they got it wrong. It just means that we're not going to disregard a Federal constitutional  That's the standard that this Court has to utilize. We've run out of time. Thank you very much. May it please the Court. Petitioner has not – State your name for the record. Michelle Swanson, Correspondent. Petitioner has not explained how his objection somehow carried over to the following morning after the voir dire of all the jurors. The record actually supports a contrary conclusion. He made his initial objection. The trial court ruled on that, made that quite clear, said that on the record as it stands now, I'm denying that. But – If that's what he did, then the Court did invite him to go forward and ask the jury questions if he wished. That's true. He did invite him to – and, in fact, he also invited him to conduct further research. Defense counsel indicated that overnight he was going to conduct further research. He said at that point he was leaning towards not questioning the other jurors because he thought it might do more harm than good at that point. Things changed the next morning. Juror number five came to the Court and said that because of his job, he felt that he just could not serve on the jury. And things changed. And in further questioning, they decided to go ahead and question the other jurors. The defense attorney had ample opportunity to renew his motion for a mistrial. He did not. He did not ask for a ruling based on the questioning of all the other jurors. Ms. Watson, why don't you face and attempt to rebut Mr. Coleman's position that you didn't cite any cases for California law that there was a consistently applied clear rule that there had to be a subsequent objection to the motion? Okay. Well, we cited numerous Ninth Circuit cases that found that California's contemporaneous objection rule is consistently applied. Petitioner appears to want cases that actually apply the rule in the exact same circumstances where an objection has been made, ruled upon, not raised again, never ruled upon again. How is Ayala not helpful to Mr. Coleman and hurtful to you? Ayala? Well, Ayala is different in that the California Supreme Court made a factual finding that the trial court in that case later issued a second ruling on the defendant's initial objection. In this case, the court of appeal made a factual finding that there was no second ruling by the trial court. So Ayala does not help Petitioner's case. It's a completely different situation. In that case, even though the defendant did not renew his objection, the purpose of the contemporaneous objection rule to have a contemporaneous ruling by the court was satisfied because the court, in fact, did rule on its own later, after the factual record had been developed further. Did that happen here, though? Didn't the court essentially say, after the voir dire was completed, okay, I'm fine. Let's get moving. Words to that effect. It wasn't that, in effect, saying, I now find that this panel is without taint, and let's go forward. Oh, he didn't. I do not believe he said, oh, I'm fine with this. What were the words in the brief? It was something like, let's move along now, or we've finished. Let's move along now. That's what the judge said. That's what the judge said. I mean, that's literally what the judge said. Well, I believe what the judge said. He didn't necessarily – I guess what I'm taking issue with, I don't think he necessarily said, I'm fine with the jury. I understand. I understand. But is what the judge said the equivalent of, okay, no problem with this jury now. Now that we've completed voir dire, let's get moving. So I think what – this is my understanding of the record. After the jurors were questioned, they went ahead and replaced juror 5 with juror alternate – one of the alternate jurors. But fast forward ahead to after all the questioning was done. Okay. So that happened, and then he said, okay, are we ready now? And the prosecutor said, yes, Your Honor. Defense attorney said nothing. So isn't – but I'm asking you, isn't in the context of this case, okay, are we ready now? The judge essentially saying, this jury is free from taint and we are ready to proceed. Well, I think that the main issue here is that under California law, the burden is on the defendant to raise any issues with respect to this. And so just because the trial court didn't say anything, the trial court didn't have a sui sponte duty to necessarily rule on that. Well, I guess I'm asking a different question. The question is, you were trying to distinguish Aiella by saying that in Aiella, the trial judge reoffered his order. I'm saying, didn't the judge here essentially do that by saying, I'm ready, let's go? Okay. Short answer, no. Why not? I don't think so. Because he – you can't just say because he didn't raise it again or invite defense counsel to talk about it or just because he moved on that that was some sort of implicit ruling. That's – How is that different than the implicit ruling in Aiella? Well, in Aiella, it was not an implicit ruling. My reading of the case, the – let me see here. Let me just find my note on that. Okay. The California Supreme Court said that in rejecting the defendant's request for additional preemptory challenges, the court noted it had excused for cause jurors whose knowledge of defendant's brother's trial that would – that would possibly affect their fairness. So the trial court – and my reading of the California Supreme Court opinion is that the trial court actually did say – had addressed this issue that, yeah, hey, I went ahead and I excused for cause these jurors that you were worried about, so you don't need any more preemptory challenges, whereas we don't have a similar express ruling here. Let me ask you a slightly different question. Should there be procedural default where the California appellate court actually treated the argument on the merits? In other words, the California court of appeal didn't treat this as procedural default. It said we would – it could be procedural default. We'd be entitled to do so, but because we're fair and just, we're going to go on and reject Mr. Grizzle's arguments on the merits. Did they actually say because they're fair and just? Yes. Did they? Yeah. I don't know. They didn't say that, but I'm – all courts are fair and just. At least they attempt to be. Why in that instance should there be procedural default? We have a California – we have a reasoned decision from the California court on the merits of this claim. Why shouldn't a Federal court? I don't know whether that determination was objectively unreasonable. Well, the – actually, the Court did find that he defaulted the claim. And then alternatively, it ruled on the merits. But we have Federal – I put a little gloss on it. We have Federal case law that says even if a State court alternatively decides it on the merits, you have to respect the valid procedural default in that situation. I don't have that case right in front of me. I'm not sure if it was cited in my brief. I think the district court cited it. Ideas of comedy. Based on ideas of comedy. Yes, that's correct. And then I just – one last point I wanted to make with respect to the Respondent's showing as to whether this is a consistently applied rule. I think that the United States Supreme Court's ruling in Walker v. Martin that came out last year provides more guidance on what the Petitioner has to do to rebut that showing. And I think Walker v. Martin makes it clear that just citing two or three cases in which the Petitioner asserts it was inconsistently applied is not enough to overcome that burden, that the State courts do have the ability and should have the ability to make exceptions in exceptional cases. The fact that the Court did not in this case, it should be respected by this Court. And that's our position here. Thank you very much. Thank you. Shall we have a minute for rebuttal? Thank you, Your Honors. The exact language that the trial judge used after the voir dire is, okay, we're ready to roll then. Those were the exact language he used. In addition, after the trial, Mr. Grizzle's trial attorney wanted to file a new trial motion based on this issue, and he wanted transcripts so that he could file the motion. And the trial judge said, look, I addressed that. I questioned all the jurors. That's not going anywhere. So, I mean, the trial judge, his okay, we're ready to roll then, even if an implicit ruling needed to be had, that was certainly an implicit ruling. Now, trial attorneys, I mean, at some point, you know, I know Your Honors, a trial judge, you get annoyed with lawyers if you keep on saying objection again, exception, objection again. I mean, how many times do you have to do it? This was a litigated matter. He spent pages of transcript arguing that the panel was tainted. And to say that he had to renew it again when there's – and today the Respondent still has not cited a single California case other than this one where default was applied under similar circumstances. But your fundamental problem is that when he raised the motion for mistrial, it was given – it was based upon a given set of facts. At that particular point, there was some concern about juror number 5. Juror number 5 had told juror number 12, and he had this vague concept that maybe there was some prejudice. That's when he makes the motion. From that point forward, there is the development of the record, which is extensive, including individual voir dire of all of the jurors to find out if there is in fact prejudice. So that when ultimately the decision is made by the trial judge that you're going to go forward, it is on a totally different record with a totally different jury panel. I mean, essentially a different jury panel. It's a totally separate, distinct situation from when the motion was filed. Well, and our position is this, and this is another unique and inconsistent thing that the California court did here. Then the motion should just be reviewed based on the state of the record at the time that he made it. It's our position that there really is no difference between the record when he made it and the record as it ultimately developed. The essence of the claim is this. This juror was approached by a prisoner at Pelican Bay State Prison, said, I hear your juror number 5. It freaked out the juror and said, how did you hear that? And he says, oh, word gets around. This juror, although was instructed not to discuss things about the case with the other jurors, then goes back to the jury room and tells all the jurors the bailiff confirmed at that first hearing, on the first day of trial, the bailiff confirmed that this jury juror then told all the other jurors about this incident. That's it. That's the state of the record. That's our position is, based on that record, there was we want review in Federal Court based on that record. We don't need anything else. Under this Court's case law, that's good enough for a presumption of prejudice under this Court's case, decision of Caliendo. There really is nothing else that was added. That is the heart of the factual record that we are relying on, is that this juror told all the other jurors about the incident, and that was established on the first day of trial at that first hearing when both the juror himself and the bailiff confirmed that the juror told it to everybody in the jury room. Thank you very much, Mr. Coleman. You've exceeded your time. The case of Grizzle v. Horrell will be submitted.
judges: Sessions, Bea, Hurwitz